UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL B BUTLER,<br><br>         Plaintiff,<br><br>     v.<br><br>PORSCHE CARS NORTH AMERICA, INC.,<br><br>         Defendant. | Case No. 16-CV-02042-LHK<br><br>**ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

Plaintiff Paul B. Butler ("Plaintiff") brings the instant putative class action case against Defendant Porsche Cars North America, Inc. ("Defendant" or "Porsche") for violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). Before the Court is Defendant's motion to dismiss Plaintiff's Class Action Complaint ("CAC").

Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART with leave to amend and DENIES IN PART the motion to dismiss.

## I. BACKGROUND

### A. Factual Background

Plaintiff lives in California and owns a 2007 Porsche 911 S C2 Cabriolet. CAC ¶ 6. Plaintiff asserts in opposition to the motion to dismiss that Plaintiff purchased the car used from a Porsche authorized factory dealership on July 18, 2015. ECF No. 19-2 (Katriel Decl. ISO Opposition). Plaintiff's repair record, which is incorporated by reference in the CAC, states that Plaintiff's car was first sold on May 27, 2007. CAC Ex. 1.

When Plaintiff's car had approximately 78,000 miles, Plaintiff's key stuck in the car, and the car would not start. CAC ¶ 6. In February 2016, Plaintiff had the car inspected at Porsche of Stevens Creek, a Porsche factory-authorized dealership in Santa Clara, California. *Id.* ¶ 6 & Ex. 1. The mechanic determined that the problem was caused by a faulty wiring harness between the car's battery and alternator that caused the battery not to fully charge. *Id.* The mechanic replaced the harness and billed Plaintiff $3,180.44 for the repair work and replacement parts. *Id.* Plaintiff concedes that neither Plaintiff's car nor the car's wiring harness was covered by any express warranty at the time of the malfunction. ECF No. 19 (Opposition).[1]

Plaintiff alleges that the faulty wiring harness is "a pervasive defect documented in Porsche 997[2] Class Vehicles across the country" that "appears to be attributable to a defect in the selection of material, gauge or other characteristic of the wiring or harness between the alternator or battery that results in insufficient charging of the battery." CAC ¶ 9. According to Plaintiff,

---

[1] Defendant requests that the Court take judicial notice of the terms of the Porsche Cars North America Limited Warranty. The Court may take judicial notice of matters that are either (1) "generally known within the trial court's territorial jurisdiction" or (2) capable of accurate and ready determination "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice when ruling on a motion to dismiss include legislative history reports, *see Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012), and court documents already in the public record and documents filed in other courts, *see Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). The Limited Warranty that covered Plaintiff's specific car is neither generally known within this Court's territorial jurisdiction nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Accordingly, the Court DENIES Defendant's request for judicial notice. Nevertheless, because Plaintiff concedes that no warranty covered Plaintiff's car at the time of the alleged malfunction, the Court assumes for purposes of this motion that any warranty provided by Defendant expired prior to the alleged malfunction.
[2] Porsche 911 model cars are also referred to by Porsche as Porsche 997 model cars. CAC ¶ 1 n.1.

2
Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

"the allegedly defective wiring poses a real and serious safety risk and hazard." *Id.* ¶ 16. Specifically, Plaintiff alleges that the insufficient charging may result in the cars becoming "disabled in the middle of a road or highway," or cause the cars' headlights or other electrical equipment to fail in the evening or during rain. *Id.* ¶ 1.

Plaintiff alleges that "Porsche has known all along about the existence of the alleged defect." *Id.* at 13. Plaintiff alleges that "by the time that Plaintiff's 2007 model year vehicle was first sold, Porsche had received numerous complaints about the insufficient charging brought about by the defective wiring and wiring harness." *Id.* ¶ 13. In support of this allegation, Plaintiff alleges that "Porsche issued a Technical Service Bulleting [sic] ('TSB') instructing its dealership's mechanics about the nature of this problem and directing them to replace the wire." *Id.* ¶ 13. Although the CAC does not specify when Porsche issued the TSB, the parties agreed in briefing that the TSB was dated January 30, 2008. ECF No. 12 at 11 n.6 (Defendant's motion); ECF No. 19 at 16 (Plaintiff's opposition). Additionally, Plaintiff cites to multiple message board postings from 2013 complaining about the faulty wiring harness. CAC ¶¶ 10-12. Plaintiff further alleges that Porsche discontinued use of the defective wiring for all Porsche 997 vehicles following the 2007 model year but took no action with regard to the existing defective wiring in Porsche 997 vehicles with model years 2007 and earlier. *Id.* ¶ 15.

**B. Procedural History**

Plaintiff filed the instant class action lawsuit on April 19, 2016. CAC, ECF No. 1. Plaintiff seeks to represent a class of "all owners within California of the Class Vehicles" where the Class Vehicles are defined as "2005-2008 Porsche 911 vehicles." *Id.* ¶¶ 1, 17.

Defendant filed a motion to dismiss the CAC on June 3, 2016. ECF No. 12 ("Mot."). Plaintiff filed an opposition on June 17, 2016. ECF No. 19 ("Opp."). Defendant filed a reply on June 30, 2016. ECF No. 22 ("Reply").

**II. LEGAL STANDARD**

**A. Rule 12(b)(6) Motion to Dismiss**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

3

Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d

727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). "A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

### C. Leave to Amend

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's CLRA and UCL claims, and additionally argues that Plaintiff lacks standing to pursue injunctive relief.

### A. CLRA Claim

Plaintiff alleges that Defendant violated the CLRA by failing to allege the existence of the defective wiring. CAC ¶ 29. Thus, Plaintiff's CLRA claim alleges a fraudulent omission. To state a valid claim for a fraudulent omission under the CLRA, Plaintiff must allege "the omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal.

5
Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

App. 4th 824, 835 (2006). "California federal courts have generally interpreted *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)). In addition, "Plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Id.* at 1145.

Defendant argues that Plaintiff's CLRA claim is legally insufficient for three reasons: (1) Plaintiff has not sufficiently pled that Defendant had a duty to disclose that a component of Plaintiff's car might require repair or replacement after the expiration of the warranty; (2) Plaintiff has not sufficiently pled that Defendant had knowledge of the alleged defect at the time of sale; and (3) Plaintiff has not sufficiently pled that Plaintiff engaged in a transaction with Defendant. The Court addresses each argument in turn.

1. **Duty to Disclose**

Defendant argues that Defendant had no duty to disclose that a component of Plaintiff's car might require repair or replacement after the car's warranty expired. Plaintiff argues that Defendant was required to disclose the defect in the wiring harness because the defect constituted a safety hazard, and because the defect existed since manufacture, is known to Defendant, and affects a critical aspect of the car's functioning.

In the instant case, the parties agree that the allegedly faulty wiring harness in Plaintiff's car was not covered by any written or express warranty from Defendant. Under California law, a manufacturer has no duty to disclose defects outside the manufacturer's warranty unless the defect implicates "either an affirmative misrepresentation or a safety issue.'" *Wilson*, 668 F.3d at 1141.

Plaintiff argues that the allegedly faulty wiring poses a safety issue because the wiring defect could cause the car to malfunction while in motion and may cause electrical systems, such as the car's headlights, to cease functioning at night or in the rain. Although Plaintiff did not personally experience these malfunctions, the CAC includes allegations that the defective wiring could cause the car to become disabled in the middle of a road or highway and could render the

car's headlights or other electrical equipment inoperable in the evening or during rain.  CAC ¶ 1. Such malfunctions affecting the car while in use could amount to a material safety hazard.  *See Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *11 (N.D. Cal. July 7, 2015) (defects that cause increased risk of losing control of vehicles in motion constitute a material safety hazard).  The fact that Plaintiff did not experience a malfunction affecting Plaintiff's safety does not alter the conclusion that the CAC plausibly alleges that the alleged defect could pose a safety hazard, which is all that is necessary to survive a motion to dismiss. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236 (C.D. Cal. 2011) (finding that the plaintiff had sufficiently alleged a safety hazard based on defects that could result in sudden engine failure while the car was in motion even though the complaint lacked any allegation that the plaintiff or any class member had ever experienced sudden engine failure while driving).

Therefore, the Court concludes that Plaintiff has sufficiently alleged that the alleged defect in the wiring harness posed a safety hazard that gave rise to a duty to disclose the defect.  Because the Court concludes that Plaintiff has sufficiently alleged that the faulty wiring constitutes a safety hazard, the Court need not resolve the parties' disputes regarding whether the existence of a defect at the time of manufacture, that is known to Defendant, and that affects a critical aspect of the car's functioning creates a duty to disclose and whether those elements have been met in the instant case.

### 2. **Defendant's Knowledge at Time of Sale**

Defendant next argues that Plaintiff has not sufficiently pled that Defendant was aware of the alleged defect at the time of the sale, as required to state a CLRA claim.  Defendant argues that any allegations of Defendant's knowledge must be pled with particularity pursuant to Rule 9(b) because Plaintiff's CLRA claim sounds in fraud.

"[U]nder the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145.  Plaintiff's CLRA claim sounds in fraud and thus is subject to Rule 9(b)'s heightened pleading standard.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (Rule 9(b) applies to civil

claims "grounded in fraud" or that "sound in fraud"). However, Rule 9(b) provides that while allegations regarding "fraud or mistake" must be alleged with "particularity," "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *10 (N.D. Cal. Aug. 20, 2015). Thus, Rule 8, not Rule 9(b), governs allegations regarding Defendant's knowledge of the defects in the wiring harness. *See Punian*, 2015 WL 4967535, at *10 (finding that Rule 8 governs allegations of knowledge in CLRA claim).

Plaintiff's car was first sold on May 27, 2007, and the parties agree in their briefing that May 2007 is the relevant date for Defendant's knowledge of the defect. *See* Mot. at 10; Opp. at 14-15; Reply at 10.

The CAC's allegations in support of Defendant's knowledge of the wiring defect prior to May 27, 2007 are that: (1) Defendant allegedly received "numerous complaints" about the defective wiring prior to the time Defendant began selling the 2007 model of the car, CAC ¶ 13; (2) Defendant issued a TSB regarding the defective wiring in January 2008, *id.*; and (3) Defendant stopped using the defective wiring in all model years after 2007, including the 2008 model year, *id.* ¶ 15. Plaintiff also includes examples of complaints regarding the defective wiring posted on online message boards in 2013. *Id.* ¶¶ 10-12.

The allegation that Defendant discontinued use of the defective wiring for model years after 2007—including the 2008 model year that was released in 2007[3]—supports the inference that Defendant knew about the defective wiring in at least 2007. It is reasonable to infer from the fact that Defendant discontinued the use of the defective wiring in the 2008 model year that Defendant was aware when designing that model in 2007 and perhaps earlier that the wiring was defective. *See Falco v. Nissan N. Am., Inc.*, No. CV 13-00686 DDP (MANx), 2013 WL 5575065, at *6-7 (C.D. Cal. Oct. 10, 2013) (allegation that the defendant issued a TSB directed to the alleged defect in 2007 combined with allegation that the defendant designed around the alleged defect in 2006 or

---

[3] Plaintiff's opposition states that the 2008 model year of the Class Vehicles was released in mid-2007, but that is not in the CAC. Opp. at 16.

8
Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

2007 "permit[s] plausible inferences that [the defendant] was aware of the defect at the time they sold the vehicles in 2005 and 2006").

Defendant's issuance of a TSB regarding the defective wiring in January 2008 likewise supports the inference that Defendant knew about the defective wiring as early as May 2007. As this Court held in *Philips*, "it is reasonable to infer that 'the TSBs . . . were proceeded by an accretion of knowledge by [the car manufacturer].'" *Philips*, 2015 WL 4111448, at *9 (quoting *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014)); *see also Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873 AG MLGX, 2011 WL 5101705, at *5 (C.D. Cal. Oct. 24, 2011) (finding allegations of internal data and TSBs issued within one of year of purchase sufficient to plead knowledge). In *Philips*, this Court found that a TSB issued 16 months after the date of sale was "especially relevant" to finding the allegations sufficient to plausibly infer that the defendant had knowledge of the alleged defect at the time of sale. 2015 WL 4111448, at *9-10. The TSB's relevance to the issue of Defendant's knowledge is even more compelling in the instant case, where only eight months elapsed between the date of sale of Plaintiff's car and the release date of the TSB, compared to *Philips*, which had a gap of 16 months between the date of sale and the date of the TSB. It is reasonable to infer that, in order for Defendant to release the TSB addressing the defect only eight months after the date of sale, Defendant had knowledge of the defect by at least May 2007. *See id.*

Taken together, the allegations that Defendant received complaints about the defective wiring before Defendant began selling the 2007 model, issued a TSB regarding the defective wiring in January 2008, and discontinued use of the defective wiring for model years post-2007 permit the Court to plausibly infer that Defendant knew about the defective wiring by at least May 2007. *See Falco*, 2013 WL 5575065, at *6; *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," the Court finds these allegations sufficient at the motion to dismiss stage.

9

Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

*Manzarek*, 519 F.3d at 1031.

Therefore, Plaintiff has sufficiently alleged that Defendant had knowledge of the alleged defect in the wiring harness at the time of sale for Plaintiff's car.

### 3. **Plaintiff's Transaction**

The CLRA provides that a consumer who suffers damage "as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person." Cal. Civ. Code § 1780(a). Section 1770, in turn, lists certain methods, acts, or practices and declares that they are "unlawful" if "undertaken by any person in *a transaction* intended to result or which results in the sale or lease of goods or services to any consumer." *Id.* § 1770(a) (emphasis added). The statute defines "transaction" as "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

Defendant argues that the Court should dismiss Plaintiff's complaint for failure to sufficiently allege that Plaintiff engaged in a transaction with Defendant.

Although Plaintiff does not specify in the CAC exactly when or from whom Plaintiff purchased his car,[4] the CAC contains two allegations that together support the plausible inference that Plaintiff purchased the car, as opposed to Defendant's argument that Plaintiff may have received the car as a gift, *see* Opp. at 14. First, Plaintiff alleges that "[h]ad Porsche disclosed to Plaintiff that the Class Vehicle contained a latent defect that would result in his vehicle being rendered non-driveable [sic] when it did, even when equipped with a brand new battery and/or

---

[4] Plaintiff attaches Plaintiff's bill of sale for the car to Plaintiff's opposition. *See* Katriel Decl. ISO Opp., Ex. 1. However, "when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (brackets and internal quotation marks omitted). "[A] district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion" unless the material is incorporated into the complaint or is subject to judicial notice. *Id.* Because Plaintiff's bill of sale does not fall into either category, the Court does not consider the bill of sale in its ruling.

alternator, Plaintiff would not have purchased his vehicle or paid as much as he did for it." CAC ¶ 35. Second, Plaintiff alleges that "Plaintiff and the class members conveyed monies and benefits to Porsche in the form of, *inter alia*, the purchase price or lease payments for their vehicles, and the repair and parts costs for their vehicles to repair the damage caused by the defect at issue." *Id.* ¶ 36. From these allegations that Plaintiff paid money to purchase his car, it is reasonable to infer that Plaintiff purchased the car and did not receive it as a gift. *Manzarek*, 519 F.3d at 1031 (in ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party").

Furthermore, the Court concludes that Plaintiff's purchase of the vehicle satisfies the "transaction" requirement of the CLRA even if Plaintiff did not purchase the vehicle directly from Defendant. "[A] cause of action under the CLRA may be established independent of any contractual relationship between the parties." *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 186 (2010).

Accordingly, courts in this district have repeatedly held that, in the context of CLRA claims brought by car owners against car manufacturers, "plaintiffs who purchased used cars, or who purchased cars from dealerships rather than directly from the manufacturer have standing to bring CLRA claims against manufacturers, even though they never entered into transactions directly with the manufacturers." *Seifi v. Mercedes-Benz USA, LLC*, No. C 12-5493 TEH, 2013 WL 2285339, at *7 (N.D. Cal. May 23, 2013); *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003 WL 25751413, at *8 (N.D. Cal. Aug. 6, 2003)) (holding that the plaintiffs' purchase of used cars satisfied the "transaction" requirement of the CLRA); *see also Philips*, 2015 WL 4111448, at *14 ("Allegations that vehicles were purchased from an authorized dealership are typically sufficient to state a claim against the vehicle manufacturer under the CLRA."). Because the CLRA does not require a contractual relationship, the purchase of used cars outside the warranty period also satisfies the "transaction" requirement of the CLRA. *See Seifi*, 2013 WL 2285339, at *1, *4, *7 (finding that the "transaction" requirement of the CLRA was satisfied by a plaintiff's purchase of a used vehicle outside its express warranty period). Defendant

acknowledges this district's decisions permitting purchasers of used cars to sue car manufacturers under the CLRA and cites no case law holding that the purchaser of a used car may not bring a CLRA claim against the manufacturer. *See* Reply at 13.

Therefore, Plaintiff's purchase of his car is sufficient to satisfy the "transaction" requirement of the CLRA. Accordingly, Defendant's motion to dismiss Plaintiff's CLRA claim for failure to state a claim is DENIED.

### B. UCL Claim

The UCL prohibits "unlawful," "unfair," or "fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. The CAC alleges that Defendant's conduct violated the "unlawful" and "fraudulent" prongs of the UCL.[5]

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the Court finds that the CAC states a claim under the CLRA, the CAC also states a claim under the "unlawful" prong of the UCL. *See id.*; *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) ("Plaintiff's unlawful prong claim depends upon his ability to state a claim under the CLRA.").

As to the "fraudulent" prong of the UCL, in the context of CLRA cases, "the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA" and "courts often analyze the two statutes together." *Kowalsky*, 771 F. Supp. 2d at 1162. In the instant case, the parties' arguments regarding Defendant's alleged deceptive practices mirror the arguments made regarding Defendant's duty to disclose under the CLRA. *See* Mot. at 15-16. Accordingly, because the Court finds that the CAC states a claim under the CLRA, the CAC also states a claim under the "fraudulent" prong of the

---

[5] Although the parties brief the "unfair" prong of the UCL, Plaintiff's UCL claim in the CAC alleges only that Defendant's conduct was an "unlawful and/or deceptive business practice" and does not rely upon the "unfair" prong. CAC ¶¶ 34-36.

12
Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

1  UCL as a deceptive practice.

2  Therefore, Defendant's motion to dismiss Plaintiff's UCL claim for failure to state a claim
3  is DENIED.

### C. Standing for Injunctive Relief

Finally, Defendant argues that Plaintiff's request for injunctive relief is improper. Defendant advances two arguments regarding Plaintiff's request for injunctive relief: (1) that Plaintiff lacks standing because Plaintiff "has not pleaded and cannot claim a realistic threat of future injury;" and (2) that any recall of the Class Vehicles is "either preempted by federal law or within NHTSA's primary jurisdiction." Mot. at 16-17. Because the Court concludes that Plaintiff lacks standing to pursue injunctive relief, the Court need not address Defendant's arguments regarding preemption.

In order to have standing to pursue injunctive relief, Plaintiff must allege that Plaintiff faces an "actual or imminent" concrete harm that has a causal connection to the conduct complained of and that would be "redressed by a favorable decision" regarding the injunction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (describing the requirements for Article III standing generally); *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 WL 5311272, at *10 (C.D. Cal. Sept. 4, 2014) (describing the requirements for Article III standing to seek injunctive relief).

In the instant case, the CAC states that it seeks "injunctive relief" as authorized under the CLRA and an order "setting forth Defendant's obligations with respect to the repair of the defect." CAC ¶ 30 & Prayer for Relief. Plaintiff clarifies in his opposition that Plaintiff "does not seek a recall, and his CAC does not pray for one." Opp. at 23.

The Court's inquiry, therefore, is whether Plaintiff has standing to seek an injunction requiring "repair of the defect" identified in the CAC. CAC Prayer for Relief. However, the allegations in the CAC do not support the inference that Plaintiff faces an imminent concrete injury traceable to Defendant's conduct that would be redressed by such an injunction. *See Lujan*, 504 U.S. at 560. Plaintiff alleges that Defendant discontinued use of the allegedly defective

wiring in all model years following 2007. *Id.* ¶ 15. Moreover, Plaintiff alleges that in 2015 Plaintiff's car was repaired to replace the faulty wiring with new wiring that properly charges the battery. *Id.* ¶ 6. There are no allegations in the CAC to indicate that the replacement wiring harness now installed in Plaintiff's car is defective, manufactured by Defendant, or otherwise causally connected to Defendant's alleged use of a defective wiring harness when the car was originally manufactured. Absent any allegations indicating that Plaintiff's car continues to be affected by Defendant's allegedly faulty wiring harness, the CAC does not allege that Plaintiff faces an imminent concrete injury caused by Defendant's faulty wiring that would be redressed by an injunction requiring Defendant to replace the wiring—wiring that, according to Plaintiff's own allegations, Plaintiff has already replaced.

Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiff's prayer for injunctive relief. However, because Plaintiff may cure the deficiency identified herein by alleging additional facts, the Court grants Plaintiff leave to amend. *See Lopez*, 203 F.3d at 1127 (leave to amend should be "freely given when justice so requires").[6]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART with leave to amend and DENIES IN PART Defendant's motion to dismiss. The Court finds that Plaintiff has alleged sufficient facts to state claims under the CLRA and the UCL. However, the Court finds that Plaintiff has not sufficiently alleged facts to show that Plaintiff has standing to seek injunctive relief.

Should Plaintiff elect to file an amended complaint to cure the deficiency identified in this

---

[6] The CLRA provides that Plaintiff may amend the complaint without the Court's permission to include a claim for monetary damages. *See* Cal. Civil Code § 1782(d) ("Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a) [requiring written notice to Defendant], the consumer may amend his or her complaint without leave of court to include a request for damages."); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *17 (N.D. Cal. Oct. 2, 2013) ("[T]he plain language of California Civil Code § 1782 states that CLRA actions for injunctive relief may be amended to include a claim for monetary damages *without leave of the court*.").

14
Case No. 16-CV-02042-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

Order, Plaintiff shall do so within twenty-one (21) days of the date of this Order.  Failure to meet this deadline to file an amended complaint, or failure to cure the deficiency identified in this Order, will result in a dismissal of the prayer for injunctive relief with prejudice.  Except as authorized by California Civil Code § 1782(d), Plaintiff may not add new parties or claims without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: August 25, 2016

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge