1  STEPHEN T. WAIMEY, SBN 87262
   *stephen.waimey@lhlaw.com*
2  DOUGLAS SMITH, SBN 101367
   *dsmith@lhlaw.com*
3  YVONNE DALTON, SBN 216515
   *yvonne.dalton@lhlaw.com*
4  ANIKA S. PADHIAR, SBN 272632
   *anika.padhiar@lhlaw.com*
5  **LEE, HONG, DEGERMAN, KANG & WAIMEY**
   3501 Jamboree Road, Suite 6000
6  Newport Beach, California  92660
   Telephone:  949.250.9954; Facsimile:  949.250.9957
7
   WILLIAM F. KINIRY, JR. (*pro hac vice*)
8  *william.kiniry@dlapiper.com*
   MATTHEW A. GOLDBERG (*pro hac vice*)
9  *matthew.goldberg@dlapiper.com*
   **DLA PIPER LLP (US)**
10 1650 Market Street, Suite 4900
   Philadelphia, PA 19103-7300
11 Telephone:  215.656.3300; Facsimile:  215.656.3301
12 Attorneys for Defendant
   PORSCHE CARS NORTH AMERICA, INC.
13

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

14        **UNITED STATES DISTRICT COURT**

15        **NORTHERN DISTRICT OF CALIFORNIA**

16 | PAUL B. BUTLER, On Behalf Of Himself And All Others Similarly Situated, | **CASE NO.  5:16-cv-02042- LHK** |
17 | | *Hon.  Lucy H. Koh* |
18 |                  Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES FILED IN OPPOSITION TO PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION** |
19 |         v. | |
20 | | |
21 | PORSCHE CARS NORTH AMERICA, INC., | Concurrently Filed |
22 |                  Defendant. | 1. Declaration of Erich Metzler |
   | | 2. Declaration of Yvonne Dalton |
23 | | 3. Declaration of Bruce Strombom, Ph. D. |
   | | 4. Declaration of Angela Rodriguez |
24 | | 5. Declaration of Melissa Barcena |
   | | 6. Declaration of Stephan Schmitt |
25 | | 7. [Proposed] Order |
26 | | Date:        April 20, 2017 |
   | | Time:        1:30 p.m. |
27 | | Courtroom:  8 |
28 | | [Trial Date:  June 25, 2018] |

---

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO       Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.       INTRODUCTION …………………………………………………....   1

II.      BACKGROUND……………………………………………………......   2

         A.   The Alternator-Starter-Battery Wiring Harnesses (the "Cables") At Issue ……   2

              1.   PCNA Identified a Manufacturing Issue in Late 2007………………..   3

              2.   Porsche AG Oversaw the Design of a Replacement Cable……………   4

              3.   PCNA Published an ATI regarding the Original Cable………………   4

              4.   Information Regarding the Original Cable, Including Information
                   About the ATI, Appeared on Public Internet Message Boards…………   5

         B.   Butler's Purchase …………………………………………………   6

         C.   Butler's Experience with the Original Cable…………………………   7

III.     ARGUMENT……………………………………………………………   7

         A.   Class Certification is Inappropriate Because Individual Issues of
              Law and Fact Predominate Over Common Ones …………………………   9

              1.   The issue affecting the Original Cable is not uniform and
                   does not lend itself to class treatment. …………………………   9

              2.   Reliance should not be presumed on a class-wide basis………………   11

                   a.   Butler has introduced no proof that all putative class
                        members were exposed to PCNA's supposedly
                        wrongful nondisclosure. ……………………………………   11

                   b.   Butler has also failed to introduce proof that putative
                        class members would have considered the supposedly
                        wrongful nondisclosure to be material to their respective
                        purchases. …………………………………………………   12

              3.   Many putative class members purchased their Class Vehicles
                   before PCNA had knowledge of the alleged
                   defect……………………………………………………………   14

              4.   Some of the putative class members' claims are likely time-barred…….   16

              5.   Some putative class members have not suffered an injury,
                   as a matter of fact. ………………………………………………....   17

         B.   Class Certification is Also Inappropriate Because the Proposed Class Is
              Overbroad. …………………………………………………………..........   19

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

# TABLE OF CONTENTS

Page

C.    The Damages Model Offered by Butler's Purported Expert, Dr. Eric Matolo, Is Inherently Flawed Because It Does Not Provide a Model of Damages That Conforms to Butler's Legal Theory. ……………………..  20

1.    The cost to repair an alleged defect is not a sufficient proxy for expected utility. ……………………………………………….. 21

2.    Dr. Matolo's model wholly fails to account for individual issues that will impact damage calculations……………………….... 23

3.    In any event, Dr. Matolo's report should be excluded as hearsay…...... 24

IV.    CONCLUSION…………………………………………………….... 25

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO        Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

<div align="right">Page</div>

**Cases**

*AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal.),
  *appeal pending*, No. 15-55778 (9th Cir. 2015) ..............................................24

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ........................................9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) ..............8

*Arabian v. Sony Elecs., Inc.*, No. 05-1741, 2007 WL 627977, at *12
  (S.D. Cal. Feb. 22, 2007) ......................................................... 9, 10, 11

*Baxter Healthcare Corp. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 121 F.3d 714 (1997) ..........16

*Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) ....................................17

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) ..........................7

*Butler v. Porsche Cars N. Am.*, No. 16-2042, 2016 WL 4474630, at *2
  (N.D. Cal. Aug. 25, 2016) ..................................................................6

*Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644,7 665 (1993) ............................17

*Cf. Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 474 (N.D. Cal. 2014) ..........................18

*Cf. Philips*, 2016 WL 7428810, at *21-22 ..................................................22

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-2941, 2017 WL 86033, at *7
  (N.D. Cal. Jan. 10, 2017) ...............................................................14, 20

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) .............................. 8, 9, 20

*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015) ................................11

*Daniel v. Ford Motor Co.*, No. 11-2890, 2016 WL 8077932, at *8
  (E.D. Cal. Sept. 23, 2016) ............................................................11, 12, 19

*Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) ......................................25

*Gonzales v. Comcast Corp.*, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ..........................17

*Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305 (3d Cir. 2016) ......................17

*In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 562 (N.D. Cal. 2013) ..............7

*In re MyFord Touch Consumer Litig.*, No. 13-3072, 2016 WL 7734558, at *15
  (N.D. Cal. Sept. 14, 2016) .............................................................21, 23

*In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liability Litig.*, 693 F.2d 847, 853
  (9th Cir. 1982) ...........................................................................16

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO       Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

1

<div style="text-align:center">

**TABLE OF AUTHORITIES**

</div>

2

**Page**

3

*Junod v. NWP Servs. Co.*, No. 14-1734, 2016 WL 6306030, at *6 (C.D. Cal. July 18, 2016) ......19

4

*Just Film, Inc. v. Buono*, --- F.3d ----, 2017 WL 510452, at *4 (9th Cir. 2017).............................8

5

*Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009)........................................19

6

*Kramer v. Toyota Motor Corp.*, --- F. App'x ----, 2016 WL 4578370, at *2 (9th Cir. 2016) ..........9

7

*Lucas v. Breg, Inc.*, --- F. Supp. 3d ----, 2016 WL 6125681, at *13
   (S.D. Cal. Sept. 30, 2016)...........................................................................................................17

8

*Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ....................................................14, 20

9

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) ..................................8, 19, 20

10

*Melgar v. CSK Auto, Inc.*, No. 2015 WL 9303977, 2015 WL 303977, at *7
   (N.D. Cal. Dec. 22, 2015)...........................................................................................................19

11

*Moore v. Apple*, 309 F.R.D. 532, 542 (N.D. Cal. 2015)........................................................8, 9, 19, 20

12

*O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000) ....................................16

13

*Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014) ....................................................................15

14

*Philips v. Ford Motor Co.*, No. 14-2989, 2016 WL 7428810, at *16
   (N.D. Cal. Dec. 22, 2016)............................................................... 8, 12, 13, 14, 15, 19, 21, 22

15

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) ....................17, 23

16

*Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210-1211 (D. Nev. 2008) .........25

17

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152-53 (N.D. Cal. 2010) ...........17

18

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 279-80 (C.D. Cal. 2002)......17

19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) .............................................................8

20

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)............................................9

21

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012)....................................14, 20

22

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482–83 (N.D.Cal.2011) ............................................18

23

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1184 (9th Cir. 2001) ..................................8

**Statutes**

16 C.F.R. § 455.2 ...................................................................................................7, 13, 16, 19

Cal. Civil Code § 1783................................................................................................................16

<div style="writing-mode: vertical-rl; text-align:center">LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660</div>

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3   Civil Local Rule 7-3(a) ...............................................................................................24

4   Fed. R. Civ. P. 23(b)(3).........................................................................................7, 8, 9, 20

5   **Other Authorities**

6   Cal. Bus. & Prof. Code § 17208 ..............................................................................16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

## I.    INTRODUCTION

Plaintiff Paul Butler asserts his case is "tailor made for class certification." (Class Cert. Mot. at 2.) He is wrong. For the following reasons, individual issues overwhelm the few questions that are common to the proposed class:

*First*, despite alleging it, Butler offers no evidence establishing that the electrical wiring harness (generally, "Cables") in all Porsche 911s, model years 2005 to 2008 (manufactured before February 2008) ("Class Vehicles") suffer from a uniform design defect. Conversely, Defendant Porsche Cars North America, Inc. ("PCNA") herein submits documentary and testimonial evidence establishing that only *some* such Cables suffer from a non-uniform condition caused by the presence of foreign material in the supplier's manufacturing equipment. Thus, determining whether a particular Cable is "defective" cannot be resolved by common proof and requires, at the very least, a vehicle-by-vehicle inspection and evaluation.

*Second*, class-wide reliance cannot be presumed with respect to PCNA's supposedly wrongful nondisclosure. Class members received disparate information from a variety of sources, including the seller of their Class Vehicle (which could be a PCNA-authorized dealership, a used-car dealership operating outside of PCNA's network, or an individual conducting a private sale), federally mandated dealership disclosures of the "major defects" that can befall used vehicles, and information about the alleged defect that was widely available in the public domain. All such issues beg for individual inquiry.

*Third*, the undisputed record evidence shows that most new Class Vehicles were sold *before* PCNA had knowledge of the alleged defect (the "Knowledge Date"). To recover under the CLRA, however, a putative class members must have purchased a Class Vehicle *after* PCNA knew of the alleged defect. This showing must be made on an individual basis.

*Fourth*, because information about the alleged defect has been widely available in the public domain since at least 2008, and because individual inquiries are necessary to determine which class members were aware of that information when they purchased their Class Vehicles, common proof cannot establish whether putative class members have brought claims within the applicable statutes of limitation.

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

*Fifth*, "injury in fact" cannot be established by common proof. Some putative class members bought Class Vehicles that were equipped with non-defective cables, and others had defective cables repaired under warranty. No such persons were injured by PCNA's alleged nondisclosure.

Moreover, several of the fundamental shortcomings in Butler's proposed class apply equally in the context of overbreadth. Specifically, Butler's failure to exclude those who could not have been injured by PCNA's alleged wrongful conduct renders his proposed class overly broad and un-certifiable on its face.

Finally, Butler's purported economic expert, Eric Matolo, fails to offer a calculation of damages that applies on a class-wide basis. That failure, standing alone, warrants denial of class certification.

For these reasons, which are detailed below, this Court should deny Butler's motion and deny class certification.

## II.     BACKGROUND

### A.     The Alternator-Starter-Battery Wiring Harnesses (the "Cables") At Issue

Porsche 911s manufactured in the model years 2005-January 2008 all were fitted with the same electrical wiring harness, which connected the car's alternator, starter, and battery (the "Original Cable"). While the vehicle's engine is running, the Cable permits the alternator to send electricity to and recharge the battery. (Metzler Decl., ¶ 5.) The Original Cable (illustrated here, in red) is comprised of two pieces of copper cable, connected by a terminal lug mounted on the starter. (*Id.*, Ex. A, Gould Report at 4.)



///

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

Butler claims to have experienced a problem with the Original Cable in his 2007 Porsche 911 when the vehicle was more than eight years old, long out of warranty, and had been driven nearly 80,000 miles. He contends that his vehicle is defective and that the alleged defect arises from "the selection of material, gauge, or other characteristic of the wiring or harness between the alternator and the battery that results in insufficient charging of the battery." (First Am. Compl. ("FAC") at ¶ 9, ECF No. 37.) He also baldly contends that all Class Vehicles suffer from the same alleged defect. (*Id.* at ¶¶ 1, 9; *see also* Class Cert. Mot. at 10.)

**1.    PCNA Identified a Manufacturing Issue in Late 2007.**

In September 2007, PCNA's customer service personnel observed that some customers were experiencing repeated charging system issues in Porsche 911s, model years 2005 to 2007. (Metzler Decl., Ex. B, ███████████████.) Specifically, some customers had communicated to PCNA-authorized dealerships (and the dealerships had, in turn, reported to PCNA) that Class Vehicles either would not start or had trouble starting. (*Id.*) In most instances, dealership technicians tested the affected vehicles and observed low battery voltage. (*Id.*) In other instances, dealership technicians noted that charging voltage across the Cable was low after the vehicle warmed up. (*Id.*)

PCNA conducted a detailed investigation of the issue between September and November 2007, and issued a final report on November 8, 2007. ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████     ███████████████████

████████████████████▌  ███████████████████

█████▌ ████████▌ ███████████████

     █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          **2.      Porsche AG Oversaw the Design of a Replacement Cable.**

19          As a result of its investigation, Porsche AG oversaw the design of an improved Cable (the

20   "Replacement Cable"), which

21

22

23                                                              As a result, certified pre-owned

24   ("CPO") and used vehicles sold after February 2008—including those originally equipped with

25   an Original Cable—may have been equipped at the time of resale with a Replacement Cable.

26          **3.      PCNA Published an ATI regarding the Original Cable.**

27          On January 30, 2008, PCNA published an Advanced Technical Information ("ATI")

28   titled "Battery Drain Due to Starter Harness Damage." (*See generally* Metzler Decl., Ex. C,

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

ATI.) Through the ATI, PCNA informed authorized dealerships of the issue associated with the Original Cable and advised that they should, before replacing a dead or discharged battery, check the voltage drop between the alternator and the battery. (*Id.*) If an excessive voltage drop is found, the ATI states "[i]t is possible that the crimps on the starter terminal where the two cables [meet and] are joined together incorrectly." (*Id.*) The ATI also notes that this issue is "often mis-diagnosed as a bad battery, bad alternator or bad starter, and these parts are often replaced in multiple repair attempts before the harness is determined to be the cause of the issue." (*Id.*) The ATI was intended to eliminate unnecessary componentry replacements and multiple repairs.

### 4. Information Regarding the Original Cable, Including Information About the ATI, Appeared on Public Internet Message Boards.

Years before Butler purchased his vehicle, information about the issue affecting some Original Cables, including references to the ATI, quickly spread throughout the public domain. References to the ATI appeared in online fora, including discussions posted at rennlist.com, renntech.org, and 6speedonline.com, as early as 2008. (*See generally* Barcena Decl.)[1] For example, a 2008 discussion regarding an "alternator cable fault" yielded the following:

> My work order says:
>
> "found bulltin (sic) instructing to check for voltage drop from alternator to battery…. Inspected cable where connected to starter motor. Found cable melted at starter motor. Req new cable as per bulitin (sic)…."
>
> So obviously there's a factory bulletin on this that explains the circumstances of the failure. . . .

(*See* Barcena Decl., Ex. A.)  Similarly, in a related discussion on renntech.org, someone stated in May 2010 that:

> The other weekend, my local dealer did a customer appreciation day . . . free under car walkthrough with the mechanics, 15% off for parts and service – and free food. The mechanic looked at the cable from the alternator to the battery to see if it was original or the upgraded Porsche one, and said there is a factory service campaign to replace the undersized original ones . . . . Before buying a new cable, you should probably check with your favorite dealer service department to get the whole story and see if the cable upgrade is covered[.]

---

[1] Butler is familiar with 6speedonline.com; indeed, a discussion thread from that website was attached as Exhibit 2 to his Amended Complaint. (*See* Dkt. No. 37-2.)

1   (*See id.*, Ex. B.)  Other posts similarly disclosed the existence of the ATI, by reference to either a

2   PCNA service bulletin or TSB.[2]  (*See id.*, Ex. D ("Had this 997 come in today for a little TSB

3   update. Occasionally after driving, the car wouldn't start, which was an issue with the early

4   997's. Porsche issued a TSB on the problem, which calls for replacing the starter/alternator cable

5   on the engine."); *id.*, Ex. C, (reciting information *verbatim* from ATI, and attributing it to

6   "Porsche's technical bulletin"); *id.*, Ex. E ("[B]ite the bullet and get the cable replaced w/ the

7   latest version. If you're still under warranty or CPO PCNA should replace it at no charge.").)

8   **B.      Butler's Purchase**

9          Butler's vehicle was manufactured in September 2006 and first leased in May 2007. (*See*

10  Dalton Decl., Ex. B at PSC00001-00002.) The PCNA New Car Limited Warranty applicable to

11  that vehicle expired no later than May 2011. (*See* PCNA New Car Limited Warranty, attached as

12  Exhibit 1 to PCNA's Mot. to Dismiss (limiting term to lesser of four years or 40,000 miles) (Dkt.

13  No. 12-2).) In May 2015, it was re-purchased by and placed in the inventory of a PCNA-

14  authorized dealership, Porsche of Stevens Creek ("Stevens Creek"). (*See* Dalton Decl., Ex. B at

15  PSC00044.) Butler purchased it in July 2015. (*See id.*, Ex. B, at PSC00006-00008; *see also*

16  Purchase Order, attached as Exhibit 1 to the Am. Compl. (Dkt. No. 37-1).)

17         Prior to purchase, Butler saw the vehicle in Stevens Creek's online inventory. He

18  "researched around that type of vehicle and did some due diligence," including internet research

19  into whether there were "any known recalls or problems to those sort of vehicles, what typically

20  they are, that sort of thing." (*See* Dalton Decl., Ex. D, 2-8-17 Butler Dep. at 53:3-20, 55:15-

21  56:13.) He then visited Stevens Creek, where he spoke with a salesman and test-drove the

22  vehicle. (*See id.* at 54:21-55:4, 57:17-58:11, 62:19-63:2.) Pursuant to federal law, Stevens Creek

24         [2] "TSB" is a common term among dealerships and in the vehicle service community. It

25  stands for "Technical Service Bulletin." *See, e.g.*, *Butler v. Porsche Cars N. Am.*, No. 16-2042,

26  2016 WL 4474630, at *2 (N.D. Cal. Aug. 25, 2016) (Koh, J.) (quoting the Complaint, which

27  referred to PCNA's issuance of a "Technical Service Bulleting [sic] ('TSB')" on the issue

28  affecting Original Cables); *see also id.* at *5.

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO            Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

had prepared a "Buyers Guide" for that vehicle, which was affixed to its window. (*See generally* Dalton Decl., Ex. B at PSC00018-PSC00019.) *See also* 16 C.F.R. § 455.2. That form prominently and conspicuously stated that the vehicle was sold "**AS IS-NO WARRANTY**." (Dalton Decl., Ex. B at PSC00018.) It also stated: "**YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle.**" (*Id.* at PSC00018) On the back side of the form, the Buyers Guide disclosed some of the "major defects that may occur in used motor vehicles," including the possibility of an "*[i]mproperly functioning alternator, generator, battery, or starter*." (*Id.* at PSC00019 (emphasis added).) Butler signed the Buyers Guide when he purchased his vehicle. (*See id.* at PSC00018.)

### C.     Butler's Experience with the Original Cable

In February 2016, Butler was unable to open the driver's side door of his vehicle. (Dalton Decl., Ex. D, Butler Dep. at 85:12-23.)  A service technician jump-started the vehicle, and Butler then drove it to Stevens Creek without issue. (*Id.* at 87:20-88:21,89:1-90:22.) Ultimately, Stevens Creek technicians removed and replaced the alternator, the alternator-starter-battery wiring harness cable, and the "seaping breather line from vapor separator to intake." (Ex. 1 to Am. Compl., Repair Order at 1 (Dkt. No. 37-1).) Butler was invoiced $3,180.44 for that repair. (*Id.*)

## III.     ARGUMENT

A proponent of class certification must prove "each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). Butler seeks class certification under Rule 23(b)(3), which permits certification only if "questions of law or fact common to class members predominate over any questions affecting only individual class members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 562 (N.D. Cal. 2013) (Koh, J.). "The party seeking class

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

1  certification bears the burden of demonstrating that the class meets the requirements of Federal

2  Rule of Civil Procedure 23." *Just Film, Inc. v. Buono*, --- F.3d ----, 2017 WL 510452, at *4 (9th

3  Cir. 2017). *See also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1184 (9th Cir. 2001).

4  If the defendant introduces evidence to show that class certification is inappropriate, and the

5  plaintiff fails to rebut that evidence, then denial of class certification is warranted. *See, e.g.*,

6  *Philips v. Ford Motor Co.*, No. 14-2989, 2016 WL 7428810, at *16 (N.D. Cal. Dec. 22, 2016)

7  (Koh, J.) (denying class certification because plaintiffs, *inter alia*, failed to introduce proof

8  sufficient to justify class-wide presumption of reliance); *Moore v. Apple*, 309 F.R.D. 532, 542

9  (N.D. Cal. 2015) (Koh, J.) (denying class certification because plaintiffs, *inter alia*, failed to

10  introduce evidence to show that most class members had "suffered any cognizable injury in the

11  first instance").

12      A "court's class-certification analysis must be 'rigorous,'" and it "may 'entail some

13  overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans &*

14  *Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

15  338, 351 (2011)); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)

16  (citation and internal quotation marks omitted) ("Before certifying a class, the trial court must

17  conduct a rigorous analysis to determine whether the party seeking certification has met the

18  prerequisites of Rule 23."). "This 'rigorous' analysis applies to both Rule 23(a) and Rule 23(b)."

19  *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *5. Indeed, under Rule 23(b)(3), the Court has

20  a "duty to take a 'close look' at whether common questions predominate over individual ones."

21  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citation and some internal quotation

22  marks omitted).

23      Butler proposes a CLRA class consisting of "[a]ll natural persons who purchased a

24  Porsche 911 vehicle of model year 2005 through model year 2008 (manufactured before

25  February 2008) in California for personal use" and a UCL subclass consisting of CLRA class

26  members "who paid a PCNA factory-authorized dealership for replacement of the Alternator

27  Starter cable for their vehicles." (Class Cert. Mot. at 1.) For the reasons that follow, neither

28  should be certified.

- 8-

### A. Class Certification is Inappropriate Because Individual Issues of Law and Fact Predominate Over Common Ones.

The predominance inquiry, which is explicitly set forth in Rule 23(b)(3), "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and in so doing "'focuses on the relationship between the common and individual issues in the case.'" *Moore*, 309 F.R.D. at 543 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (internal quotation marks omitted)). Under Rule 23(b)(3), the Court has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 133 S. Ct. at 1432.

Here, Butler has not established (and cannot establish) that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because this case turns on a series of individual inquiries, class certification is inappropriate, and Butler's motion should be denied.

### 1. The issue affecting the Original Cable is not uniform and does not lend itself to class treatment.

Butler simply presumes that the battery harnesses in Class Vehicles suffer from a uniform defect. However, as explained above, ███████████████████████ ████████████████████████████████████████████████ ████████████████████ Indeed, the unrefuted evidence shows that under normal circumstances, the crimping process for the Original Cable would ████████████ ████████████ Thus, Butler has not carried his burden of proof, as there is no "evidence of a common defect" and "there are no 'common questions of law or fact' binding the proposed class together." *Kramer v. Toyota Motor Corp.*, --- F. App'x ----, 2016 WL 4578370, at *2 (9th Cir. 2016).

Other courts in this Circuit have denied class certification where the claims were premised on non-uniform defects, recognizing that "a manufacturing defect . . . can be significantly different than a [uniform ]design defect." *Arabian v. Sony Elecs., Inc.*, No. 05-1741,

1    2007 WL 627977, at *12 (S.D. Cal. Feb. 22, 2007). As stated in *Arabian*:

> Unlike a design defect, which is by its nature ubiquitous, a manufacturing defect can be ubiquitous **or** isolated, depending upon the circumstances. Among the circumstances relevant for making this determination would be whether the [products at issue] were manufactured in one or multiple factories; whether the same materials, processes and equipment were used in the manufacture of all [such products]; whether the same components . . . were installed [i]n all [such products]; [and ]whether all or most [of the products at issue] have experienced or will experience the alleged defect or symptoms.

*Id.*

In *Arabian*, the district court noted that "in excess of 300,000" of the laptop computers at issue were sold in the United States. *Id.* However, the Court faulted the plaintiffs for failing to show that "a majority of [such products'] owners experienced common problems from a common defect," and it concluded that the plaintiffs "failed to demonstrate that a fact-sensitive inquiry will not be required of many, if not all, of the members of the proposed Class." *Id.* at *12, *13.

The same issues are present here. Butler has identified 10,556 potential Class Vehicles (Class Cert. Mot. at 4-5), but he has not presented any evidence from which the Court could find that each (or most, or even a majority) of those vehicles suffers from a uniform defect.[3] Butler's failure to demonstrate, by reference to actual evidence, that each Class Vehicle suffers from a

---

[3] Butler states that roughly 17.5% of Class Vehicles (1,848 of a potential class of 10,556) had their alternator cables replaced under warranty. (Class Cert. Mot. at 20.) However, he offers no evidence to establish **why** those cables were replaced. Because some may have been replaced for reasons wholly unrelated to the issue affecting Original Cables, Butler fails to demonstrate that a majority of any subset of Class Vehicles suffered from a uniform defect.

Butler also suggests that he has served subpoenas on twenty PCNA-authorized dealerships to determine the number of alternator cables replaced outside of the PCNA New Car Limited Warranty program. (*See id.* at 21.) In effect, he suggests that he may eventually find additional evidence to support his motion. (*See id.*) But Butler should not be excused for failing to timely serve his discovery or failing to adequately support his motion when it was filed.

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

uniform defect results in a situation where "a fact-sensitive inquiry will . . . be required of many . . . of the members of the proposed Class." *Arabian*, 2007 WL 627977, at *12. To resolve those individual inquiries, the Court will have to "look under the hood" of each Class Vehicle, to (1) determine whether it is equipped with an Original Cable, and, if so, (2) remove and test each such Original Cable to determine whether it suffered from the manufacturing issue at hand.[4] This time-intensive, labor-intensive, and fact-sensitive inquiry precludes class certification.

### 2.    Reliance should not be presumed on a class-wide basis.

a.    Butler has introduced no proof that all putative class members were <u>exposed to PCNA's supposedly wrongful nondisclosure.</u>

Butler cites *Daniel v. Ford Motor Co.*, No. 11-2890, 2016 WL 8077932, at *8 (E.D. Cal. Sept. 23, 2016), to assert that class-wide reliance on PCNA's supposedly wrongful nondisclosure may be presumed. (*See* Class Cert Mot. at 14-15.) This argument is misguided. In that case, the district court concluded that reliance could be presumed because the proposed class was comprised exclusively of new-car purchasers who had "interacted with authorized Ford dealers prior to purchase." *See Daniel*, 2016 WL 8077932, at *8 (E.D. Cal. Sept. 23, 2016). In effect, the court accepted the plaintiffs' suggestions—based on each class member's pre-purchase interaction with Ford dealers—that the class had been subject to a uniform representation (or, more accurately, a uniform nondisclosure) and that each class member "would have been aware of the alleged defect had Ford disclosed it to its dealerships." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015); *see also Daniel*, 2016 WL 8077932, at *8.

---

[4] Of course, such inquiry and testing could only be made on Class Vehicles as they exist today. Alternator cables (like all automotive parts) suffer from normal wear and tear, and they have a limited lifespan. Thus, even if it were feasible to "look under the hood" of each Class Vehicle—and PCNA respectfully suggests that it is not—such an inquiry would be futile. The first Class Vehicles were produced and sold nearly thirteen years ago, and Butler has produced no evidence to suggest that those vehicles (or any others) are still equipped with their original parts.

1    Here, however, it would be inappropriate to apply the same class-wide presumption.

2    Members of Butler's proposed class may have been exposed to wildly disparate representations

3    about Class Vehicles, and none received a uniform misrepresentation. That is so because the

4    proposed class in this case—unlike the proposed class in *Daniel*—includes many individuals

5    who had no reason to communicate with PCNA or PCNA-authorized dealerships: *i.e.*,

6    individuals who purchased used Class Vehicles either from used car dealerships operating

7    outside of the PCNA-authorized network or from other individuals (in private sales).

8    The *Daniel* court presumed reliance only because each putative class member had

9    "interacted with authorized Ford dealers prior to purchase." *See Daniel*, 2016 WL 8077932, at

10   *8. A different situation is presented here. Butler's proposed class includes individuals who had

11   no interaction with PCNA dealers prior to purchase, with whom PCNA had no communication,

12   and to whom PCNA could not have made any representation. Accordingly, if Butler's proposed

13   class is certified, then the Court will need to conduct individual inquiries of used-car purchasers

14   to determine where they bought their vehicles, with whom they communicated prior to purchase,

15   and whether any of those communications were with PCNA or a PCNA-authorized dealership.

16           b.    Butler has also failed to introduce proof that putative class
                     members would have considered the supposedly wrongful

17                   nondisclosure to be material to their respective purchases.

18   Moreover, with respect to putative class members who actually communicated with

19   PCNA-authorized dealerships, Butler offers no proof that the supposedly wrongful nondisclosure

20   was material to any class member's purchase. This conclusion is compelled by this Court's

21   December 2016 decision in *Philips*, the Court found that some class members learned about a

22   defective Electronic Power Assisted Steering ("EPAS") system before purchasing class vehicles

23   because "a warning about sudden EPAS failure was present in the owner's manual for all class

24   vehicles." 2016 WL 7428810, at *16. The Court also found that the plaintiffs had not shown

25   "whether consumers read the manuals before purchase or whether Ford dealerships discuss[ed]

26   the content of the owner's manuals in a sufficiently uniform way . . . ." *Id.*  Because class

27   members had been exposed to "disparate information, some of which explicitly acknowledged

28   the limitations of the EPAS system," the Court thus concluded that a class-wide presumption of

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

reliance was inappropriate. *Id.*; *see also id.* (citation and internal quotation marks omitted) (noting that "the issue of . . . reliance [wa]s a matter that would vary from consumer to consumer," and concluding that "individual issues would predominate over common issues in determining reliance for the purposes of Plaintiffs' CLRA and fraudulent concealment claims"). *Id.*

Butler's proposed class fails for the same reason. Many putative class members (including Butler) purchased CPO or used Class Vehicles from PCNA-authorized and other used-car dealerships. Those dealerships were required by federal law to affix "Buyers Guides" to such vehicles. *See* 16 C.F.R. § 455.2. The Buyers Guide clearly and prominently discloses that "major defects . . . may occur in used motor vehicles," including the possibility of an "[i]mproperly functioning alternator, generator, battery, or starter." *Id.* (*See also* Dalton Decl., Ex. B at PSC00019.) Thus, each putative class member who purchased a used Class Vehicle from a dealer did so subject to notice of the very same alleged defect that Butler puts at issue. (*See, e.g.*, Dalton Decl., Ex. B PSC00019 (requiring signature to acknowledge the dealership's disclosure of potential "major defects").) Even Butler himself, who purchased an eight year-old vehicle which had been driven nearly 80,000 miles, acknowledged those defects but nevertheless declined to purchase a supplemental warranty. (*See id.* at 1; *see also* Purchase Order, attached as Exhibit 1 to the Am. Compl. (Dkt. No. 37-1); *see also* Contract of Sale at 3 (listing "Fidelity New ESC," a supplemental 24 months / 24,000 mile warranty, as one of several "Products Not Selected") (Dkt. No. 19-1 (Exhibit 1 to the Katriel Decl.)).)

Furthermore, before purchasing Class Vehicles, many putative class members may have learned of the alleged defect from ample information in the public domain. As early as 2008, just a few months after PCNA published the ATI to its network of authorized dealerships, the issue was discussed at length in online fora. (*See* Barcena Decl., Ex. A (suggesting, based on dealership technician's repeated reference to a bulletin, that "there's a factory bulletin on" the issue affecting the Original Cable "that explains the circumstances of the failure . . . ."), Ex. B (noting a "factory service campaign to replace" the "cable from the alternator to the battery"), Ex. D (specifically referencing a "TSB" that "calls for replacing the starter/alternator cable" on

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

Class Vehicle engines).) In fact, in at least one instance, three paragraphs from the ATI were *quoted verbatim* and attributed to a PCNA "technical bulletin." (*See id.*, Ex. C.) Paradoxically, Butler—who referred to and relied upon online posts concerning the alleged defect in the Amended Complaint—now fails to acknowledge the existence such materials in his Class Certification Motion.

Based on the foregoing, the proposed class should not be certified. Butler has introduced no proof to show whether putative class members read either the Buyers Guide or the information available in the public domain, and he has also failed to introduce proof that PCNA-authorized dealerships discussed such information "in a sufficiently uniform way." *Philips*, 2016 WL 7428810, at *16. Because the putative class members in this action have been (or at the very least could have been) exposed to "disparate information, some of which explicitly acknowledged the limitations of the" Original Cable, "the issue of . . . reliance [will be] a matter that [will] vary from consumer to consumer," and "individual issues [will] predominate over common issues in determining reliance for the purposes of" the CLRA claim. *Id.* Accordingly, Butler's class certification motion should be denied.

### 3.   Many putative class members purchased their Class Vehicles before PCNA had knowledge of the alleged defect.

Butler avers that "PCNA's knowledge of the defect presents a common question subject to classwide proof," and he suggests that "[w]hether PCNA knew of the defect prior to the Class Vehicles being sold presents a single question having a unitary answer." (Class Cert. Mot. at 14.) He is wrong. To substantiate a CLRA claim, a plaintiff must establish that PCNA "was aware of [the] defect at the time of sale." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). *See also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-2941, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017) (Koh, J.). Thus, consumers who purchased Class Vehicles prior to PCNA's Knowledge Date have suffered no legally cognizable injury and should be excluded from the class. *See Wilson*, 668 F.3d at 1145; *see also Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (proposed class that "as currently defined would include . . . non-harmed" individuals was "imprecise and overbroad"). Here, PCNA has offered unrefuted affirmative

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

evidence establishing that the Knowledge Date can be no earlier than November 2007 (when PCNA began its investigation) and as late as January 2008 (when PCNA issued the ATI). (*See* Metzler Decl., Ex. A, Gould Report at 1; *id.*, Ex. C, ATI.) This is significant. Regardless of the exact Knowledge Date, based on the model years at issue in this litigation (2005 to 2008), it cannot logically be disputed that an overwhelming number of new Class Vehicle purchasers have no legally cognizable claim against PCNA.[5]

It warrants note that this case differs materially from *Philips*, where a similar argument was raised (and rejected) in the context of a predominance analysis. In *Philips*, every class vehicle was sold after the date upon which the vehicle manufacturer was deemed to have knowledge of the defect at issue. Accordingly, this Court concluded that the manufacturer's knowledge of the defect was "susceptible to proof by generalized evidence." *Philips*, 2016 WL 7428810, at *17. Here, by contrast, some vehicles were sold before, and others after, PCNA's Knowledge Date.[6] Thus, the Court would be forced to make a series of individual inquiries wherein each purchaser would be required to prove that he or she purchased a Class Vehicle after the Knowledge Date and thus suffered a cognizable injury.[7]

---

[5] To resolve Butler's motion, the Court may make a finding, establishing the Knowledge Date. *See Philips*, 2016 WL 7428810, at *17. As explained above, the Knowledge Date can be no earlier than November 2007 and may be as late as January 2008. Where the Knowledge Date falls within that range is a matter of judicial discretion. *See Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014) (internal quotation marks and citation omitted) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

[6] This is true despite the fact that the exact Knowledge Date has not yet been determined. Class Vehicles were sold as early as 2004 (when the 2005 Model Year Porsche 911 was released). But there is no evidence to suggest that PCNA was aware of the issue with the Original Cable before November 2007. (Dalton Decl., Ex. C, 1-18-2017 Metzler Dep. at 32:4-33:20.)

[7] Butler cannot salvage the proposed class claims by continued reference to a supposed

*(Footnote continued)*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION          Case No. 5:16-cv-02042-LHK

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

4.      **Some of the putative class members' claims are likely time-barred.**

The Ninth Circuit Court of Appeals has recognized that an "alleged tortfeasor's affirmative defenses (such as . . . the statute of limitations) may depend on facts peculiar to each [putative class member's] case." *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liability Litig.*, 693 F.2d 847, 853 (9th Cir. 1982).[8] That is the case here. The proposed class obviously includes individuals who purchased Class Vehicles more than four years before Butler commenced this actions. Accordingly, their individual CLRA claims are time-barred on their face. *See* Cal. Civil Code § 1783 (applying three-year limitations period to CLRA claims); Cal. Bus. & Prof. Code § 17208 (applying four-year limitations period to UCL claims).

Individuals with facially time-barred claims will need to rely on the discovery rule to salvage their claims. But application of the discovery rule will involve a series of individual inquiries, focusing on: (1) when each putative class member purchased his or her Class Vehicle; (2) from whom that putative class member purchased his or her Class Vehicle (*i.e.*, from a PCNA-authorized dealership, or from another individual or entity); (3) what information, if any, was conveyed to that putative class member by PCNA or a PCNA-authorized dealership, including, *inter alia*, information conveyed through conversations with salespeople and Buyers Guides posted on used vehicles pursuant to 16 C.F.R. § 455.2; (4) what other information about the issue affecting the Original Cable (including information in the public domain), if any, the putative class member received and reviewed before purchasing their Class Vehicle. Thus, "[b]ased on the individualized, fact-intensive nature of the necessary inquiry in this case, the statute of limitations issues preclude a finding that common issues predominate over individual issues" here. *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000). *See also*

"safety issue." As a threshold matter, he offers no supporting argument or legal authority in his moving papers. Further, he offers ***no*** evidence to show or even suggest that such an issue exists. At this stage of the proceedings, he can no longer rely on the bare allegations in his pleadings.

[8] *Dalkon Shield* was abrogated on other grounds. *See, e.g.*, *Baxter Healthcare Corp. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 121 F.3d 714 (1997) (table decision).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO         Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152-53 (N.D. Cal. 2010) (finding that common issues did not predominate over individual issues because, *inter alia*, "substantial statute of limitations issues are likely to complicate the class claims"); *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 279-80 (C.D. Cal. 2002) (recognizing that individual issues concerning application of statute of limitations contributed to finding that common issues did not predominate over individual issues).

### 5.   Some putative class members have not suffered an injury, as a matter of fact.

It is well-accepted that "damage calculations alone cannot defeat class certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) (citation and internal quotation marks omitted). But "when courts speak of 'damages,' they are often referring to two distinct concepts: the 'fact of damage' and the measurement/amount of damages." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305 (3d Cir. 2016). *See also Lucas v. Breg, Inc.*, --- F. Supp. 3d ----, 2016 WL 6125681, at *13 (S.D. Cal. Sept. 30, 2016) (recognizing "a distinction between the 'fact of damages,' which is essentially a threshold question of causation and injury in fact, and the 'amount of damages,' which involves an assessment of damages due after resolution of common questions of liability"). That distinction is critical. "While determining the ***amount*** of damages does not defeat the predominance inquiry, a proposed class action requiring the court to determine the individualized ***fact*** of damages does not meet the predominance standards of Rule 23(b)(3).'" *Lucas*, 2016 WL 6125681, at *13 (quoting *Gonzales v. Comcast Corp.*, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012)).[9]

---

[9] *See also Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (recognizing that a class should not be certified where "not every member of the proposed classes can prove with common evidence that they suffered impact"); *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 665 (1993) (resolving class certification motion filed in CLRA action, pursuant to California Civil Code) ("Although difference in computing damages is not sufficient to deny class certification, differences in the actual existence of damages or in the manner of incurring

*(Footnote continued)*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

1   Here, regardless of the damages calculation employed, it is inescapable that several

2   groups of putative class members suffered no damages whatsoever. Those groups include

3   individuals who purchased Class Vehicles equipped with:

4   • **Replacement Cables**. Because those individuals did not receive an Original Cable,

5   they could not have been injured by PCNA's supposedly wrongful nondisclosure of an issue that

6   only affected Original Cables. (*See* Am. Compl., ¶ 15 (conceding that Replacement Cables did

7   not suffer from the alleged defect that affected Original Cables); *see also* Strombom Decl., Ex.

8   A, Strombom Report at 20 (discussing actual examples of Class Members who "purchased their

9   vehicle after the Alleged Defect had already been repaired by a prior owner" and, a result, "could

10   not have been damaged at the time of purchase").)

11   • **Original Cables that were properly crimped**. Such individuals, like those who

12   bought Class Vehicles equipped with Replacement Cables, could not possibly have been injured

13   by the nondisclosure of an issue that did not affect their vehicles. That is so because, under

14   normal circumstances, the crimping process would "achieve a near airtight crimp" that would not

15   suffer from the oxidation or electrical resistance associated with Cables that were improperly

16   crimped. (Schmitt Decl., ¶ 12; *see also id.* at ¶ 11.)

17   • **Original Cables that were improperly crimped but repaired or replaced under**

18   **any applicable warranty.** As explained by PCNA's damages expert, Bruce A. Strombom, Ph.D,

19   putative class members who repaired allegedly defective cables under warranty "received exactly

20   the vehicle they bargained for"—*i.e.*, one that performed as warranted. (Strombom Decl., Ex. A,

21   Strombom Report at 38.) *Cf. Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 474 (N.D. Cal. 2014)

22   (Koh, J.) (putative class members who were made whole by the defendant suffered no damages);

23   *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 482–83 (N.D.Cal.2011) (finding a class definition

24   overbroad where the proposed class included persons who had already received a remedy and

25   were not damaged). Such individuals had no out-of-pocket costs and "never realized any

26   enhanced risk of an out-of-warranty repair." (Strombom Decl., Ex. A, Strombom Report at 38.)

27   _____

28   damages are appropriate considerations.").

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO       Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

### B.     Class Certification is Also Inappropriate Because the Proposed Class Is Overbroad.

Many of the issues discussed in the preceding section, on predominance, also demonstrate the overbreadth of Butler's proposed class. *See Moore*, 309 F.R.D. at 542. Overbreadth analysis ensures that the class definition is "reasonably tied to the alleged wrongful conduct," *Melgar v. CSK Auto, Inc.*, No. 2015 WL 9303977, 2015 WL 303977, at *7 (N.D. Cal. Dec. 22, 2015), to avoid the inclusion of "individuals who, by definition, ***could not*** have been injured by [that] conduct," *Moore*, 309 F.R.D. at 542. *See also Junod v. NWP Servs. Co.*, No. 14-1734, 2016 WL 6306030, at *6 (C.D. Cal. July 18, 2016) ("Courts in this circuit have consistently denied certification where class definitions include both harmed and unharmed members . . . [b]ecause the class definition . . . is imprecise and overbroad."). Of course, an overbroad class cannot be certified. *See Mazza*, 666 F.3d at 596; *Moore*, 309 F.R.D. at 542; *see also Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad.").

Here, the proposed class should not be certified because it is strikingly overbroad. It includes many individuals who, by definition, could not have been injured by PCNA's alleged wrongful conduct. They include:

- **People who bought used Class Vehicles from sellers other than PCNA-authorized dealerships**, who could not have been injured by PCNA because they were never exposed to the nondisclosure at issue. *See Daniel*, 2016 WL 8077932, at *8.

- **People who bought CPO or used Class Vehicles from dealerships**, who, pursuant to federal law, received a Buyers Guide disclosing the potential "major defects" that could afflict used vehicles, including the possibility of an "[i]mproperly functioning alternator, generator, battery, or starter." (See generally Dalton Decl., Ex. B at PSC00019.) See also 16 C.F.R. § 455.2. Because these individuals learned of the possible issue before purchase, they could not have relied on and could not have been harmed by PCNA's supposed wrongful nondisclosure of the same. See *Philips*, 2016 WL 7428810, at *16.

- 19 -

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

- **People who otherwise had knowledge of the alleged defect before purchasing their Class Vehicles**, who learned of the alleged defect after reviewing information that was widely available in the public domain. (See Barcena Decl., Ex. C; see also id., Exs. A-B, D-E.) These individuals, like those who reviewed the Buyers Guide, should be excluded from the proposed class. See *Mazza*, 666 F.3d at 596 (noting that a proposed class must exclude those members who learned of the alleged defect before they purchasing class vehicles equipped with the allegedly defective componentry).

- **People who bought Class Vehicles before PCNA had knowledge of the alleged defect.** These individuals are not entitled to recover under the CLRA, and, thus, they could not have been damaged by PCNA's supposedly wrongful nondisclosure. See *Wilson*, 668 F.3d at 1145; *Coleman-Anacleto*, 2017 WL 86033, at *7.

- **People who bought Class Vehicles equipped with either non-faulty Original Cables or Replacement Cables.** Such individuals did not purchase the allegedly defective componentry at issue, were not injured, and have no right to recover damages in this action. (See Am. Compl., ¶ 15 (conceding that Replacement Cables did not suffer from the alleged defect that affected Original Cables); Schmitt Decl., ¶¶ 11-12; Strombom Decl., Ex. A, Strombom Report at 20-21.)

Because the proposed class includes individuals who, as a matter of law, could not possibly have been damaged by PCNA's supposedly wrongful nondisclosure, it is overbroad and should not be certified. *See Mazza*, 666, F.3d at 594; *Moore*, 309 F.R.D. at 543. Moreover, while the court may modify proposed class definitions to make them sufficiently definite, *see Mazur*, 257 F.R.D. at 568, such modifications would be futile here. That is so because, as detailed above, Butler has not proven that common issues will predominate over individual issues.

    **C.**    **The Damages Model Offered by Butler's Purported Expert, Dr. Eric Matolo, Is Inherently Flawed Because It Does Not Provide a Model of Damages That Conforms to Butler's Legal Theory.**

For purposes of Rule 23(b)(3), Butler must offer a damages model showing that "damages are susceptible of measurement across the entire class." *Comcast*, 133 S. Ct. at 1433. The model "must measure only those damages attributable to" Butler's theory of liability. *Id.* As

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO     Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

this Court has explained, "[if] Plaintiffs do not offer a plausible damages model that matches their theory of liability, 'the problem is not just that the court will have to look into individual situations to determine the appropriate measure of damages; it is that Plaintiffs have not even told the Court what data it should look for.'" *Philips*, 2016 WL 7428810, at *19 (quoting *In re MyFord Touch Consumer Litig.*, No. 13-3072, 2016 WL 7734558, at *15 (N.D. Cal. Sept. 14, 2016)).

Here, Butler's purported expert theorizes that the Class Members "bargained and paid more for the class vehicles than they would have done had the defective nature of the vehicle been disclosed." (Matolo Report at 8 (docketed as Ex. 3 to the Katriel Decl, Dkt. No. 45-4).) To quantify this alleged overpayment, Dr. Matolo offers a model grounded in a concept called "expected utility," which, according to Dr. Matolo, "represents the expected level of satisfaction a consumer will obtain from the consumption of a product." Dr. Matolo's model attempts to measure the difference between the expected utility of a Class Vehicle with an undisclosed defect and the expected utility of a Class Vehicle if the defect were known. It does so by multiplying the cost to repair the Cable by the probability that the Cable will fail post-warranty.

Dr. Matolo's model does not conform to Butler's legal theory for two reasons. First, as this Court held in *Philips*, the cost to repair the alleged defect is not a sufficient proxy for expected utility. And second, even if it were, Dr. Matolo's model wholly fails to account for any of the individual issues that will impact the damage calculations. For these additional reasons, the proposed class cannot be certified.

### 1. The cost to repair an alleged defect is not a sufficient proxy for expected utility.

In *Philips*, this Court rejected an identical damages model, holding that the costs of repair are not a sufficient proxy for putative class members' expected utility. The same result is warranted here.

The plaintiff in *Philips* alleged that Ford sold vehicles with known, but undisclosed defects in the vehicles' EPAS systems. *Philips*, 2016 WL 7428810, at *1. Plaintiff's expert, like Matolo, opined that "class members would have discounted the price they were willing to pay by

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

1   the probability that the EPAS would fail and paid only for the 'expected utility' of the EPAS."

2   *Id.* at *20. The expert in *Philips*, however, did not attempt to quantify this expected utility;

3   instead the report "quantif[ied] damages . . . based on the amount Ford charged its dealers for

4   [new] EPAS systems" for purposes of repairs. *Id.*

5           The Court rejected the damages model on the ground that Plaintiff's expert did not even

6   "attempt[ ] to measure consumers' expected utility, which is the basis of Plaintiffs' theory of

7   liability." *Id.* at *22. Although the Court recognized that the concept of expected utility could

8   provide a starting point, it found that damage calculations cannot simply be derivative of repair

9   costs. *Id.* at *21-22. Instead, to "measure[ ] the expected utility of a defective [component], as

10  well as the disutility that an average consumer attributes to safety issues and risk aversion," an

11  expert should use "survey data and other empirical studies to show how consumers value the

12  [vehicles]." *Id.* at *22. This is because, as explained in the report of PCNA's economist, Dr.

13  Strombom, the cost to repair a defect is not the same as the vehicle's diminished value or

14  expected utility. (*See* Strombom Decl., Ex. A, Strombom Report at 12.)

15          Like the expert whose report was rejected in *Philips*, Dr. Matolo fails to even ***attempt*** to

16  measure consumers' expected utility with respect to Class Vehicles. *Cf. Philips*, 2016 WL

17  7428810, at *21-22. As Dr. Strombom explains—and as is obvious from the face of Matolo's

18  report— Dr. Matolo's model "does not offer any survey or empirical data to show the value that

19  Putative Class Members placed on Class Vehicles at the time of purchase and how this value

20  would have changed had the Alleged Defect been disclosed." (Strombom Decl., Ex. A,

21  Strombom Report at 19; *see also id.* at 14, (faulting Dr. Matolo's model for failing to analyze

22  what each putative class member "would have paid, or been willing to pay, for his or her Vehicle

23  had there been an additional disclosure"), 17 (noting that Dr. Matolo failed to provide evidence

24  that putative class members "would have acted upon the disclosure in a manner that would have

25  expressed a lower willingness to pay . . . the expected cost of repair . . .").)

26          Because Dr. Matolo's model wrongly uses repair costs as a proxy for expected utility, the

27  model does not conform to Butler's legal theory, and the class should not be certified.

28  / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO     Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

**2.    Dr. Matolo's model wholly fails to account for individual issues that will impact damage calculations.**

Disparate damages among class members do not necessarily preclude class certification. *Pulaski & Middleman*, 802 F.3d at 987. But, as stated above, where damages will vary among class members, a proffered damages model must inform the Court of the "data" it should look for to make individual determinations. *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *15. Here, Dr. Matolo's attempt to quantify how much less class members would have paid had they known about the alleged defect before purchasing Class Vehicles necessarily involves individual determinations. The problem is, that his model fails to recognize, analyze, or point the Court to the facts and issues necessary to resolve those individual inquiries.

Dr. Strombom has analyzed the individual inquiries that Dr. Matolo fails to consider. (*See generally* Strombom Decl., Ex. A, Strombom Report at 13-15, 18-22, 23-26, 33-35.) At least one of those inquiries is discussed above at length: the impact of putative class members' pre-purchase knowledge of the alleged defect. (*See id.* at 25-26, 33-35.) Dr. Strombom recognizes that Dr. Matolo's model is flawed because it fails to provide a method for determining the effect of such knowledge on putative class members' damages. (*See, e.g.*, *id.* at 33 (faulting Dr. Matolo's model for not "determining the level of awareness and the valuations that particular Putative Class Members would have placed on any additional disclosure").)

Further, Dr. Strombom notes that Dr. Matolo fails to point the Court toward the data it needs to determine how damages should be apportioned among successive owners of Class Vehicles. (*See id.* at 23-25.) Because each Class Vehicle may have several successive owners, Dr. Matolo should have proposed a manner of allocating damages among them. He did not. (*See id.*) As Dr. Strombom explains, this creates a logical fallacy. "Under Dr. Matolo's methodology, the total damages for a Class Vehicle with six [successive] owners could be as high as $2,046, which is almost ***double*** the average actual cost of repair . . . ." (*Id.* at 24 (footnote omitted).)[10]

_____

[10] This concern is not merely hypothetical. Dr. Strombom cites to six Class Vehicles owned by multiple successive owners. (Strombom Decl., Ex. A, Strombom Report at 24.)

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

1    Dr. Matolo has also failed to take into account how motor vehicle sale prices are

2    determined. (*See id.* at 13-15.) As Dr. Strombom notes, "his methodology gives no consideration

3    to the way in which vehicle prices are determined (i.e., via individualized negotiation between

4    seller and buyer), fails to identify a source of actual transaction prices for Class Vehicles, and

5    fails to show any impact of the additional disclosure Plaintiff seeks (pertaining to a possibility of

6    the Alleged Defect) on those prices." (*Id.* at 13.) And Dr. Matolo "has failed to identify any

7    class-wide source or method of determining the actual prices of the transactions," which is

8    necessary for the Court to determine if, and the extent to which, Putative Class Members

9    overpaid as a result of PCNA's supposedly wrongful nondisclosure. (*Id.* at 14.)

10    Next, Dr. Strombom faults Dr. Matolo for failing to consider the actual value that

11    putative class members would have placed on disclosure of the alleged defect. (*See id.* at 14-15.)

12    In fact, as set forth above, Dr. Matolo offers no proof of consumer's expectations, and no proof

13    or analysis of what each putative class member "would have paid, or been willing to pay, for his

14    or her vehicle had there been an additional disclosure." (*Id.* at 14.)

15    Finally, Dr. Strombom notes that Dr. Matolo fails to recognize or account for

16    individualized expectations about vehicle performance. (*See id.* at 18-22.) This failure is

17    particularly important with respect to putative class members, like Butler, who purchased used

18    Class Vehicles with high mileage. (*See id.* at 19.) Such individuals, who may have purchased

19    "as-is" vehicles from PCNA-authorized dealerships, other used-car dealerships, or in private

20    transactions with other individuals, "would have very different expectations about the defect-free

21    nature of a vehicle when compared to someone that purchased the vehicle new." (*Id.*)

22    **3.    In any event, Dr. Matolo's report should be excluded as hearsay.**

23    Pursuant to Civil Local Rule 7-3(a), PCNA objects to Dr. Matolo's report on the basis

24    that it is inadmissible hearsay that is not subject to any exception set forth in the Federal Rules of

25    Evidence. There is no foundation for Dr. Matolo to offer the report or opinions contained therein.

26    Further, the report itself is not made under penalty of perjury, and Dr. Matolo has not sworn its

27    contents to be true and correct. Accordingly, it should be excluded. *AFMS LLC v. United Parcel*

28    *Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal.), *appeal pending*, No. 15-55778 (9th Cir.

- 24 -

2015); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210-1211 (D. Nev. 2008)

("an unsworn expert report is inadmissible"); *see also Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d

Cir. 1989) (ruling under Rule 56(e) that plaintiff's purported expert's report was "not competent

to be considered" because the "substance of this report was not sworn to by the alleged expert").

## IV.   CONCLUSION

For all of the reasons stated above, PCNA requests that the Court deny Butler's motion

and deny class certification.

Dated:  March 9, 2017                                    Respectfully Submitted:

                                                          _/s/Yvonne Dalton_____
                                                        Stephen T. Waimey
                                                        *stephen.waimey@lhlaw.com*
                                                        Douglas Smith
                                                        *dsmith@lhkaw.com*
                                                        Yvonne Dalton
                                                        *yvonne.dalton@lhlaw.com*
                                                        Anika S. Padhiar
                                                        *anika.padhiar@lhlaw.com*
                                                        **LEE, HONG, DEGERMAN, KANG &**
                                                        **WAIMEY**
                                                        3501 Jamboree Road, Suite 6000
                                                        Newport Beach, California  92660
                                                        Telephone:  949.250.9954
                                                        Facsimile:  949.250.9957

                                                        William F. Kiniry, Jr.
                                                           (admitted *pro hac vice*)
                                                        *william.kiniry@dlapiper.com*
                                                        Matthew A. Goldberg
                                                           (admitted *pro hac vice*)
                                                        *matthew.goldberg@dlapiper.com*
                                                        **DLA PIPER LLP (US)**
                                                        1650 Market Street, Suite 4900
                                                        Philadelphia, PA 19103-7300
                                                        Telephone:  215.656.3300
                                                        Facsimile:  215.656.3301

                                                        *Attorneys for Defendant,*
                                                        *Porsche Cars North America, Inc.*

- 25 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO          Case No. 5:16-cv-02042-LHK
PLAINTIFF PAUL B. BUTLER'S MOTION FOR CLASS CERTIFICATION